and Ryan Christopher Locke is here for the appellate baker and Roger Chalmers is here for the appellate and Mr. Locke you may begin your argument. Good morning your honor thank you. Ryan Locke for Waseem Daker. Mr. Daker is a Muslim incarcerated in a Georgia prison. In 2017 he sued the prison official after they forcibly shaved his beard and kept him in a feces-covered cell causing him injuries. But because Mr. Daker had more than three prior federal lawsuits dismissed to proceed inform apocryphs he was required to allege that he was an imminent danger of serious physical injury at the time he filed the complaint. Although he did this, the district court dismissed the complaint. This court should reverse that dismissal because Mr. Daker properly alleged that he was an imminent danger of serious physical injury from being forcibly shaved, from being shaved with unsanitary and broken clippers, and from being exposed to feces. And first I'd like to talk about the standard the standard to show imminent danger. This standard is essentially a pleading requirement that comes out of the Prison Litigation Reform Act. And this court's sister circuits have emphasized that the imminent danger exception is a threshold procedural question as part of a simple statutory provision. In fact the Seventh Circuit in C.R. Pagleny v. Saney, that's 352 Federal 3rd 328 from 2003, said to fine-tune what is serious enough to qualify for the exception would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim. And the way that this court resolves this question is by looking at the complaint, taking the allegations as true, construing the complaint liberally because Mr. Dacre was pro se when he filed it, and then conducting a de novo review. Mr. Dacre properly alleged imminent danger in his complaints in a number of ways. He alleged that guards at the Georgia Diagnostic Prison forcibly shaved him in November 2012, December 2012, and November 2013. He also alleged that he was forcibly shaved at Georgia State Prison when he was moved there. He alleged that his back was injured because he failed to comply with the, he was unwilling to comply with the grooming policy of the prison. I'm looking at Judge Royal's order in this case and he says here the court accepts these allegations as true, but construing the allegations in a light most favorable to Mr. Dacre, he says he alleges that he has been forcibly shaved numerous times at the prison and only suffered minor injuries, a cut on some. And that's, I mean, he was cut while he was shaving and suffered minor injuries. And so that's enough to establish imminent harm in the past and a likelihood to receive imminent danger and harm in the future? Well, the, we don't have the cuts alone. We also have the injuries that he sustained in the process of being forcibly shaved, the injuries to his back. And then we also have what he alleged that they used chemicals on him to force him to comply. And those chemicals burned his eyes and throat. And this, the chemical spraying in the latest forcible shaving occurred in 2017, roughly two weeks before he filed this complaint. So I would say the allegations are a with the Clippers and that they're close in time to when he filed the complaint, which is, which is when this court looks to see if imminent danger existed. He was at Reedsville in 2017. Is he still at Reedsville? I'm not entirely sure, Your Honor. You don't know where he is? The, I have not looked to see where he is in the last month. Okay. This case came out of Reedsville. He's been at a lot of different prisons. He's got a life sentence for murder. So, Yes, Your Honor. And I think that that also underscores the importance of the district court hearing cases like this. Now, you're not, you're not claiming they are not allowed to use any force when he refuses to be shaved. Are you? Well, there's certainly, prison officials are certainly allowed to use force to maintain order in a prison. The problems here... And to enforce the prison rules, reasonable prison rules. Certainly. Mr. Dacre is Muslim, and that's why he is, his religion... We understand, and there's a case challenging that. But at the time this all happened, that was a constitutional, I mean, it was a policy. And I don't know how he gets around that they were entitled to use some force in shaving him. I mean, he refuses to be shaved. I mean, that's established. So this goes on. I don't know how often it happens. How often does it happen? And Your Honor, I think that... Over the same thing. About 40 cases. Now, he has more experience than I do in before this court and in the district court. Right. But I think to answer... In that question really here, we need to see what happens in that case challenging it. You know, court's gonna sort out whether it's a good policy or not. I know that order stayed. Well, and I think the questions that the court is asking now would be appropriate for the district court to consider in, for example, a motion for summary judgment. And so what we're talking about here is the threshold question of, will the court accept the complaint in an informal poverty status? I'm just speaking for myself and only based on the complaint here. The unsanitary Clippers, he's been there in the prison for many years and he keeps saying unsanitary Clippers. And one of our decisions, I didn't make this up, just one of them says it's speculative because he's been being shaved all the time with alleged unsanitary Clippers and he's never shown he's got a problem, you know, an infection. So that one doesn't really... It's clear that's speculative and it's not imminent. His own allegations make that. Then you've got, I suppose, to the feces in that one shelf, that one cell on one time where another inmate had been there and they didn't clean it up before Mr. Dacre was in there. And we've got another case already, he alleged about that, that's not gonna get imminent either. So the only thing to me that you potentially have is that, okay, the guards are using force when they shave him, but they're allowed to use force when they shave him. And so I look to see if the force is excessive and he doesn't really allege any injury. So I don't know how we get there on this particular complaint in 2017, in September 2017. This is like four years ago. And I understand the court's concern. I mean, he's filed other lawsuits, much of them since then too. And I think how I would respond to the court's concerns is first, I think he is alleging injuries from the forcible shavings with his back and that sort of thing. For the feces covered cells, the third circuit in Gibbs said that inmates ought to be able to complain about these unsafe conditions without waiting for something to happen to them. And Mr. Dacre did allege in the complaint that he received a sinus infection from being in this cell. But is that of a case of three striker? Yes. And so it's Gibbs versus Cross, it's cited in the brief, it's a 1998 third circuit case. And the Supreme Court recently held that there was no qualified immunity for keeping individuals in feces covered cell. And so I think a lot of these questions are the kinds of questions that should be litigated. And it could very well end up that Mr. Dacre... Really what needs to be litigated is the beard policy in the three, although if it's held to be constitutional, I don't know what's going to happen in that case, but if it's held to be constitutional, this is going to still go on and on. And maybe they're going to say you can't, they're going to let him have his three inches. I think the policy now is one half inch, right? It's either a half inch or an inch, it's something around there. It's well less than the three inches that Mr. Dacre... And what is his request? He wants a three inch or he wants no shaving. I think he's required to have a beard as big as his hand, which is about three inches. Do you think if he gets a three inch beard, he's still going to allow them to shave him to three inches? We'll see what happens, Judge. But really that's what's going on here. It's really the policy that needs to be litigated on the merits, not this individual, this one time shaving in September 2017. And I think that what we're looking for here is, did he allege any serious physical injury and imminent danger of it occurring again? What you've got here is whether we've got repetitive complaints about the same thing over and over and over, and the court's already ruled on about three or four of them saying it's not enough. I don't know what this one has that's any different than the three appeals I just, you know, talked about. That's my problem, is what we've already done in these other cases. Although they're non-published, they are his cases. And Your Honor, if I could... I know I'm out of time. If I could take maybe a minute to respond to your latest point. The other cases they don't cover these same specific acts, so they're not duplicative in that way. They're unpublished, so they're non-binding. But I think the court's concern is that Mr. Dacre could very well go on to lose, that the force could have been authorized. No, I'm not concerned about that at all. I'm concerned about the imminent danger requirement of the PLRA, and particularly when you've got a serial litigant, which, you know, this is not his fourth or his fifth, you know, this is his 30th. I would point to the pattern that occurred over the four years, the fact that the last forcible shaving and the chemicals occurred about two weeks before he filed this complaint, a little bit under two weeks, and the fact that it's the same defendants who are doing this to him over time. And I think that this policy only supports that there is an imminent threat, because, you know, assumingly the prison will continue to attempt to enforce this policy as they did over the four years of acts in this complaint. You may not know this, but obviously he got three of these decided before he was a three-striker. Has he gotten any IFP since he's been a three-striker? My sense was he'd had still a few more. I don't want to mislead the court. I'm not entirely sure. I don't believe so, but if I do discover one, then if I could write a letter to the court. No, I'm not, and I'm not sure it's totally relevant. I was just curious if you knew. Okay, you've answered my questions. Thank you. Well, Mr. Locke, over the years, he's complained about a lot more than just the prison's grooming policy. Is my understanding incorrect that he's filed over a thousand of these complaints in federal court over the years? I don't know the alternative basis for the dismissal by the district judge. The judge says here on page 10 of his order, furthermore, and in light of the plaintiff's well-known history of filing frivolous and duplicative claims, the court finds that this complaint is both malicious and an abusive process. So, I mean, we could affirm to this report just on the alternative finding alone that the claims are duplicative, malicious, and abuse under the federal rules of civil procedure. Well, I would argue that the claims are not duplicative, and I would point to the chart on page 37 of our brief that tracks the dates of the incidents complained about in the various lawsuits, and so I would say that at the very least the case before this court, these incidents are separate and distinct dates, and he's asking for both injunctive and monetary relief, and so he's permitted to file multiple complaints based on actions occurring in different dates. You know, whether that's a good strategic choice or not, I'm not sure, but the law certainly allows him to do that, and so what he complains about here is different from what he's complained about in other cases. All right. Thank you. Thank you, Your Honor. We'll hear from the appellate. Mr. Chalmers. May it please the court. Good morning. Roger Chalmers for the state of So now to bring a lawsuit, he must pay the filing fee in full at the outset of his case rather than piecemeal over time. That's what the appeal is about. The court's precedents, this court's precedents, provide the law that is needed to address Mr. Dacre's contentions. Our position is there's no need to break new ground here, but I would like to point the court to a case outside of this circuit, Lewis v. Sullivan. It's a Seventh Circuit case from 2002-279-F3-526, because Lewis captures the why behind some of the points that we're talking about. Lewis explains that 1915g imposes a real limitation on a prisoner's ability to bring claims in court, but it is a statutory limitation, and specifically it's a recognition by Congress that there's no constitutional entitlement to a subsidy. And the full import of this is understood when we see that in the statute's text there's no exception for important claims or substantial claims or even for claims that address fundamental rights. So I start with this because when you look at the factors, the 1915g factors, you come back to those basic principles. The court's precedents establish that Dacre can overcome his three strikes and proceed IFP only with plausible allegations that he is under imminent danger of serious physical injury. He doesn't have to prove that contention, but he has to have plausible allegations showing that it is so. And as this court has said in Brown, they can't be speculative or general allegations. Counsel, would you agree with me that science has established that diseases like HIV and hepatitis are contracted and transmitted through bodily fluid transmissions or exchanges? Do you agree with me on that, that it's generally recognized? I don't have a reason to disagree with you, Your Honor. Okay. And so that's, for example, why we don't reuse hypodermic needles. That would be a great risk in doing that of introducing blood-borne diseases like hepatitis and HIV to an individual who had a hypodermic needle reused on himself or herself. So why isn't that the same problem if we're talking about what is what he has alleged, which is effectively a policy of using unsanitized clippers from one inmate to another when we know that there is HIV and hepatitis in the prisons? Why isn't that, it doesn't seem speculative to me any more than it's speculative that, you know, the use, reuse of a hypodermic needle, that sterilization, or I mean even reuse at all, I guess, would, you know, can introduce blood-borne illnesses that, for which there is no known treatment with respect to HIV, no known cure, I should say. Why isn't that the same case with respect to his allegations that there is a policy of using unsanitized clippers? Your Honor, I think Mr. Dacre's allegations show why, because he claims that he has been required to use unsanitized clippers on many occasions before. So you're saying that because he hasn't contracted a disease, there's no risk? No, that's not in all of what I'm saying. I'm saying that he has provided fact information which shows that his allegation is speculative. He says that unsanitized clippers are used, but he doesn't plead either that he has been harmed by it or that this is a means by which disease is actually transferred in the prison. He's speculating on that, and that's different from other cases, like the cases that the counsel cites from the Ninth Circuit that talk about the failure to screen for HIV or other infectious disease. How would you feel about using unsanitized clippers that you knew had just been used on somebody else who had HIV? I mean, I'm going to say that that is how blood-borne diseases like that are transmitted. So what is speculative about it? Maybe it's speculative as to whether he actually contracted, but it's not speculative as to whether that's a way that it was transmitted. Your Honor, I just have to say I'm not aware of science that says that the things that are challenged in this case, the use of broken or And he does not point to science in his complaint. He doesn't need to, but he also doesn't want to experience in his complaint that gives some plausibility to his allegation. He doesn't say that disease, for example, has been shown to be rampant because of the use of unsanitized clippers, and he doesn't show that he has been harmed in any way. And again, I think it's in 2013, and yet he himself has not been harmed by it. And again, he hasn't pointed to any harm. To show that he was harmed to establish imminent danger, right? I mean, you had to wait until you were harmed, then there would be plenty of claims that couldn't be brought at all, except by the estate of somebody. You don't have to wait until you're harmed if you adequately allege imminent danger. And this is the part that I would agree with your honor on is that I don't believe he has adequately alleged imminent danger when he specifically pleaded that this means of shaving is used on a regular basis, but he fails to plead any facts to allow the court to reasonably infer that the use of that means to shave actually causes injury or causes a threat of injury to other inmates. There's nothing for the court to draw upon to make that finding, other than respectfully, our speculation perhaps from the science that using a damaged clipper or a clipper of that kind that he describes will transfer disease. If I could, I'd like to say that there's a suggestion that the analysis the district court would do on a 1915G look at a complaint is somehow different from other analyses that are done initially in the pleadings. And I'd say that it's not really. This court has said, and the decisions are consistent with those from other circuits, the Chavez case from the 10th circuit or the 2nd circuit, excuse me, and the Chiarpaglini case from the 7th circuit, both say that conclusory allegations will not do. So what is needed are specific allegations of a present imminent danger that may result in serious physical harm or another way that this court has phrased it in Brown in the 2004 case is specific allegations of ongoing serious physical injury or a pattern of prison misconduct, evidencing a likelihood of that kind of injury. So there are two points I'd like to make here that I think show the deficiencies in the complaint on this present imminent danger point. And I think the district court got both of them right. The first is that the allegations of imminent danger of serious physical injury are speculative and they're conclusory. And the second is that the prison condition that is really being challenged here is one of Mr. Dacre's own making as Judge Wilson and Judge Hull, you've noted in your questioning. So if I could take the first speculative and conclusory nature of the allegations, Mr. Dacre says in his pleadings that he will on occasion, but not always refuse to comply with the GDC beard length restriction. His choice to comply, his choice to shave on occasion shows that he can avoid a use of force. He also says that GD officers may ultimately, but not as a first resort use force to get them to comply. And I think it is telling to look at his allegations. In this case, a use of force occurred fully two months after Dacre was apt to shave. In that interim time period, he was issued a disciplinary report. He was provided disciplinary hearing. He was after that hearing found guilty and given sanctions. One of the sanctions was to be moved to the tier two location. And in all that time, he was not forcibly shaved. Instead, after that officers returned to his cell and asked him a second time. And then again, a third time, will you shave to comply with the policy? And it was only after that, that force was used to get them to comply. And this gets to your questions, Judge Wilson and Judge Hall. In other words, use of force is not inherent in the GDC's enforcement of its beard length restrictions. It only comes after there is an escalation of some sort. And then we get to the use of force. It is speculative, I would submit at best from Dacre's allegations that prison guards always use pepper spray when they force a prisoner to shave. It is speculative to, I would suggest, to conclude that anytime a prisoner is removed involuntarily from his cell and handcuffed and then escorted to the barber shop to be shaved, that he will be subjected to serious physical injury. And on these points, we can look to the complaint again, because Dacre says he was forcibly shaved, in his words, in 2012 and 2013. And yet he does not allege that he suffered injury on those occasions. So if you go back to the standard, is harm ongoing? It certainly does. He does say that he was cut. He does, Your Honor. He does say he was cut on some, as you mentioned earlier. But that, I would submit, is not a serious physical injury. So the harm is not ongoing. Is the harm imminent? And I think here we should look to the cases that Mr. Dacre and his counsel cites. They cite to the Jacobi case of this court from 2021 and to Smith v. Clemons from 2012. Look again at all the steps that Mr. Dacre says occurred before force was used. The guards asked. He was issued a D.R. He was given a hearing. The guards asked again, and only then was force used. That kind of situation is categorically different from the situation in Jacobi and Smith v. Clemons, where for some reason, guards without reason and without notice use force gratuitously against prisoners. There's no allegations that Mr. Dacre is beaten simply because he does not shave, only that the prison here takes steps to enforce its shaving policy. And there is only speculation that in that multi-step process, he is in imminent danger of serious physical injury. Well, let me ask you this, counsel. Judge Sands, I believe that the Southern District of Georgia entered an order finding that the Georgia Department of Corrections union policy is unconstitutional, and that order is now on appeal. If that order is affirmed, what effect would that have on this case? Your Honor, it's a good question, and it goes back to Judge Fall's question or comment earlier, is do you need to wait for a ruling in that Smith case in order to sort out what this case should go? And so the answer I would give the court is no, absolutely not. And it's actually a very simple and clear answer given the precedence. Both this and also all of the out-of-circuit precedents that are cited by Mr. Dacre's counsel indicate clearly that whether there is an imminent danger of serious physical injury is determined when the complaint was filed. So the simple and short answer to this question is that when Mr. Dacre filed this lawsuit in, at the time that he filed this lawsuit, the Smith case was not out. There this court's ultimate ruling in Smith cannot change the fact that he was not in imminent danger at the time the suit was filed. There's another component to that timing question which I think is important, and it goes to whether there was some sort of gratuitous violence being inflicted on Mr. Dacre. At the time that he says force was used, there was no guidance, for example, from the district court in Smith or from this court on the constitutionality. And so there was no suggestion that there was gratuitous violence like in Jacobi or Smith. Could we decide this case on the alternative ruling alone? That Dacre has a well-known history of filing frivolous and even aside from whether or not he's in imminent danger? Your Honor, I'll say only that the district judge, Royal, issued a reasoned opinion on those points. We did not, the state of Georgia, did not take a position on those separate legal issues, so I'm not prepared to argue and I would not argue that those are separate grounds for dismissal. What I would say is that we believe the 1915 G ground is significant and sufficient in itself and that Mr. Dacre, if he wants to proceed with this constitutional challenge, must do so after paying the full filing fee. And this dismissal on the 1915 G is without prejudice. That's correct. Right. Correct, Your Honor. And I think it gets back to the Lewis case that I cited earlier. I'm and this goes to the second piece. The prison condition being challenged is one of Mr. Dacre's making because he has refused instructions to shave. And it does matter that force was not like the gratuitous force used in the Jacobi and the Smith case. The point is that force is sometimes necessary in a prison setting. And as the court has recognized, that's what occurred here. I think, do you know if he's ever paid the filing fee in any case? I mean, they let you pay the filing fee over time, right? You can pay it in pieces, right? The that is an option for those prisoners who are not three strikers under 1915 A, you can pay in pieces. Mr. Dacre, I know from other litigation, has paid the filing fee, both in the district court and on appeal. And but can he can he now that he is a three striker, pay the filing fee in pieces? He cannot. They don't let you have a plan? No, no, that option, you have to you have to pay it a lump sum. That's correct, Your Honor. That's an option that that Mr. Dacre had before he dismissed on that ground. But now that he is a three striker, he cannot take that payment plan, so to speak, pay the fee up front. I would have thought he could not. I learned something. But anyway, it's a dismissal without prejudice right now. Yes, it is. Thank you, Your Honor. So if there are no further question, we'd ask the court to affirm. Thank you, Mr. Chalmers. Mr. Lack will reserve some time for rebuttal. How about that? If the dismissal is without prejudice, how do we find there was an abuse of discretion? Before that, if there's a dismissal without prejudice, generally, there's no abuse of discretion because the litigant can just refile the case. Well, I think. First here, Mr. Dacre could not refile the case because some of these acts are now barred by the statute of limitations. And two, it's a de novo review of the trial court's dismissal, not an abuse of discretion. And I think this court can can say, hey, it's just wrong under 1915G to dismiss a case like this, that Congress passed this law for a reason. And Congress wanted prisoners to be able to challenge unconstitutional policies, particularly when there is an imminent threat of violence against the prisoner. And this is the mechanism by which they do it. So I don't think if this court affirmed the dismissal, I don't think that Mr. Dacre could just turn around and pay the filing fee. I think that he would suffer consequences because some of these have aged out. Yeah, I think my opposing counsel talking about the HIV, if the prison had a Russian roulette policy, where they would just engage in Russian roulette until you shave, opposing counsel would argue that because no one's been shot, that that's not alleging imminent violence. And that's just not the case. Here, Mr. Dacre's alleged several ways that he's been harmed. And because it's a ongoing pattern with the same defendants, he's alleged that he's at the threat of imminent harm. And simply because he's not contracted HIV over the years that they have cut him with unsanitary clippers does not remove it from a potential threat. And you can look at the various three striker cases that we saw. Does he tell us what unsanitized clippers are? I mean, you go to the hairdresser and they cut your hair and then they wash them off. They use the same clippers, but they run them on the sink. I don't even know what unsanitized clippers means. I can't imagine they don't wash them off and put hot water on. I mean, I don't know what unsanitized clippers mean. And Your Honor, if it turns out that... Does he say in his complaint what unsanitized clippers means? It's never clean for months or days. Does he give us any details other than conclusory allegation of unsanitized clippers? I believe he alleges that they're not sanitized after the person before him. I don't think he alleges... But what does he mean by sanitized? Put in, you know, some kind of steam, hot water, and not... I mean, I don't want to stand what unsanitized... I don't know why, but I thought I recalled reading that they weren't put in any kind of barbicide or anything like that. Right. I think they just were not treated at all. Obviously different from... But does this complaint say what he means by unsanitized? Well, I think even if it doesn't go into detail about what... I'm gonna go read it, but you know if it says anything other than unsanitized clippers. I don't believe it does. And if it does, I don't think it goes into great detail. But I also think it doesn't matter because I think the normal usage of unsanitized shows that there's a risk. And he certainly alleges that there's a risk of him contracting HIV. But doesn't he also allege that there are procedures that the Georgia prisons require that they, in order to sanitize the clippers, that the prison guards don't comply with? He does, and he cites directly to those regulations. So a discord could look to what those regulations require and find that the allegation is that the prison does not do what's necessary under those allegations. Mark, I want to go back to the alternative reason for the dismissal. And you indicated that we review a section 1915 dismissal de novo. But it's a precedent, it's clear, isn't it? That whether a suit is implicative or malicious, we review that for an abuse of discretion. Yes, Your Honor, I would agree. If there are no other questions, I thank the panel for its time. Thank you, Mr. Locke and Mr. Chalmers. Are you caught upon it, Mr. Locke? Yes, Your Honor. Well then, we thank you for your service. Thank you. Appreciate your service. It was well argued. Thank you.